# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Sitetech, Inc.,

        Plaintiff,        Case No. 16-cv-10943

v.        Judith E. Levy
        United States District Judge

Cross Environmental Services,
Inc., and U.S. Specialty Insurance    Mag. Judge Stephanie Dawkins
Company,    Davis

        Defendants,

and

Cross Environmental Services,
Inc.,

        Counter/
        Cross-
        Plaintiff,

v.

Sitetech, Inc., Renu Asset
Recovery, Inc., and Merchants
Bonding Company,

        Counter/
        Cross-
        Defendants.

_____/

# OPINION AND ORDER DENYING CROSS-DEFENDANT MERCHANTS BONDING COMPANY'S MOTION TO DISMISS [16]

Cross-defendant Merchants Bonding Company brings a motion to dismiss cross-claimant Cross Environment Services, Inc.'s cross-claim against Merchants. Cross Environment Services was hired to perform asbestos removal/abatement during the demolition and cleanup of a power plant. Cross Environment Services alleges that it is owed money for work performed, and seeks payment from Merchants, which provided a performance and payment bond for the project. Merchants argues that the bond unambiguously does not cover the work performed by Cross Environment Services. Because, taking Cross Environment Services' allegations as true, the contract unambiguously covers the kind of work that was performed by Cross Environment Services, Merchants' motion to dismiss is denied.

## I. Background

CDC Marysville, LLC is the owner of the Marysville Power Plant. CDC Marysville contracted with Renu Asset Recovery, Inc. in May 2014, to "provide all labor, materials, equipment, services, supplies and documentation necessary to demolish, remove, haul off and legally

dispose of" the site ("Prime Contract"). (Dkt. 24-2 at 2-3 (1(a)).) The Prime Contract also required Renu to obtain a payment and performance bond of $10,000,000. (*Id.* at 6 (10(b)).)

Renu then contracted with SiteTech, Inc. to "provide all labor, materials, equipment, services, supplies, documentation and supervision, as necessary to assist [Renu] in the performance of Services and other obligations under the Prime Contract" ("Subcontract"). (Dkt. 24-3 at 2 (2.c).) The Subcontract incorporated by reference the entire Prime Contract. (*Id.*)

SiteTech also agreed to "obtain and maintain throughout the pendency of the Services . . . a payment and performance bond to ensure timely and proper completion of all Services in full compliance of the Prime Contract and full payment of all subcontractor's [*sic*], suppliers and materialmen in the principal amount of no less than [$10,000,000] and otherwise upon terms and conditions required by CDC [Marysville] under the Prime Contract." (*Id.* (2.b).) On May 14, 2014, SiteTech obtained such a performance and payment bond from Merchants ("defendant," for the purposes of this opinion) ("Bond Contract").

3

In August 2014, Renu contracted with Cross Environment Services, Inc. ("plaintiff," for the purposes of this opinion), to perform the asbestos removal/abatement required by the Prime Contract and applicable law ("Asbestos Contract"). (Dkt. 24-6.) The asbestos removal/abatement was required to take place before SiteTech could demolish and then remove material for scrap sale.

Briefly, for the purposes of this particular motion, plaintiff alleges that the asbestos removal/abatement was more extensive than anticipated, took longer than originally planned, and cost a lot more money than anticipated. (Dkt. 4 at 13-18.) Under the original Asbestos Contract, plaintiff was supposed to be paid $3,554,110. (*Id.* at 18.) With the additional services required to complete the work—which plaintiff alleges SiteTech and Renu agreed to pay—the invoiced amount came to $4,316,443.30. (*Id.*) Plaintiff alleges that it has been paid only $3,333,070.81, and is owed the balance due of $983,372.49. (*Id.*)

Plaintiff's Count III, the relevant claim here, is a claim upon the payment bond as to defendant. According to plaintiff, the contract between SiteTech and defendant explicitly covers the work performed

4

by plaintiff. (*Id.* at 21-23.) So as not to be duplicative, the relevant specific provisions of the Bond Contract are discussed below.

## II. Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Analysis

The governing substantive law in this case is the law of Michigan. (*See* Dkt. 4-2 at 7 ("This Agreement shall be governed by and construed in Accordance with the laws of the United States of America and the State of Michigan."); Dkt. 4-4 at 10 ("This CONTRACT will be

5

interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Michigan.").)

Under Michigan law, the Court's "primary role in interpreting a contract . . . is to determine and enforce the parties' intent." *Dietrich v. Bell, Inc.*, 554 F. App'x 418, 423 (6th Cir. 2014) (citing *Stine v. Cont'l Cas. Co.*, 419 Mich. 89, 112 (1984)). "To this rule all others are subordinate." *Shay v. Aldrich*, 487 Mich. 648, 660 (2010) (quoting *McIntosh v. Groomes*, 227 Mich. 215, 218 (1924)). "A court will ascertain the intent of the parties from the plain and unambiguous language of a contract." *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs.*, 323 F.3d 348, 357 (6th Cir. 2003) (citing *Haywood v. Fowler*, 190 Mich. App. 253, 258 (Mich. Ct. App. 1991)). "Courts must construe contracts 'as a whole; if reasonably possible, all parts and every word should be considered; no part should be eliminated or stricken by another part unless absolutely necessary.'" *Id.* (quoting *Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997)).

The following provisions of the Bond Contract between SiteTech and defendant are important for the purposes of the motion.

6

First, defendant is liable to Renu and CDC Marysville "to pay for labor, materials, and equipment furnished for use in the performance of the Construction Contract." (Dkt. 4-7 at 1-2 (cover page and §1).)

Second, defendant has an obligation to "Claimants[] who do not have a direct contract with [SiteTech]," if such Claimant has "furnished a written notice of non-payment to [SiteTech]" and has "sent a Claim to [defendant]." (*Id.* at 2 (§5.1).)

Third, defendant "shall not be liable to . . . Claimants or others for obligations of [SiteTech] that are unrelated to the Construction." (Dkt. 4-7 at 3 (§10).)

Fourth, the "Construction Contract" is the "agreement between [Renu and CDC Marysville] and [SiteTech] identified on the cover page, including all Contract Documents" (*id.* (§16.3)), which are "[a]ll the documents that comprise the agreement between [Renu and CDC Marysville] and [SiteTech]." (*Id.* at 4 (§16.5).)

Defendant does not directly dispute that plaintiff is a Claimant. (Dkt. 16 at 10 ("Even if [plaintiff] qualifies as a 'Claimant,' the clear and unambiguous language of the [] Bond [Contract] . . . precludes any obligations and payments by [defendant] to [plaintiff].").) And at the

7

hearing on this motion, defendant's counsel argued that "[w]hile [plaintiff] may be a Claimant because it asserted a claim under a mechanic's claim, [defendant] is not liable to the Claimants of obligations of SiteTech that are unrelated to the [Construction C]ontract." Thus for the purposes of this opinion, the Court can assume that plaintiff is a Claimant. The issue is whether, taking plaintiff's allegations as true, plaintiff's claim was covered by the Bond Contract, *i.e.*, that plaintiff's work was "[]related to the [Construction C]ontract."

Defendant argues that plaintiff "is not a subcontractor (or sub-subcontractor) to SiteTech, and it did not perform work pursuant to, or in any way related to, the Subcontract" between SiteTech and Renu. (Dkt. 16 at 13.) According to defendant, because the Asbestos Contract was signed by plaintiff and Renu and did not incorporate the agreement between SiteTech and Renu, it does not qualify as a "Construction Contract" as defined by the Bond Contract. (*Id.*)

Plaintiff responds that "a direct contractual relationship with Site[T]ech is not required," and the "asbestos abatement work was related to the 'Construction Contract' as that term is defined in the [Bond Contract]." (Dkt. 24 at 22-23.)

8

As set forth above, the "Construction Contract" is the "agreement between [Renu and CDC Marysville] and [SiteTech] identified on the cover page, including all Contract Documents" (*id.* (§16.3)), which are "[a]ll the documents that comprise the agreement between [Renu and CDC Marysville] and [SiteTech]." (Dkt. 4-7 at 4 (§16.5).)

As plaintiff notes, the agreement between Renu and SiteTech expressly incorporates the entirety of the Prime Contract between Renu and CDC Marysville. The Prime Contract required "all labor, materials, equipment, services, supplies and documentation necessary to demolish, remove, haul off and legally dispose of" the site, (Dkt. 24-2 at 2-3 (1(a))), so SiteTech assumed that obligation in the Construction Contract referenced in the Bond Contract. (Dkt. 4-7 at 3-4 (§§16.3, 16.5).)

Although there is no direct agreement between plaintiff and SiteTech, SiteTech had the obligation (by incorporation) to legally dispose of the materials at the site, which by law required the asbestos abatement/removal services of plaintiff. Even though the Asbestos Contract was between Renu and plaintiff, it is a stretch to argue that

9

those legally required services "are unrelated to" the agreement between SiteTech and Renu and CDC Marysville. (Dkt. 4-7 at 3 (§10).)

Defendant argues in its reply that "[w]hen Renu subcontracted the asbestos abatement and removal to [plaintiff], Site[T]ech was no longer obligated to provide any labor, materials[,] equipment, services, supplies, documentation, and supervision as necessary to assist Renu in the asbestos abetment and removal (assuming Site[T]ech was previously responsible for the same). Those obligations fell to [plaintiff]." (Dkt. 26 at 4-5.)

But SiteTech's obligation to do anything "necessary to assist [Renu] in the performance of Services and other obligations under the Prime Contract," which necessarily included the obligation to "legally dispose of" the site (including to provide asbestos abatement/removal), was only relieved by the agreement between Renu and plaintiff.

Taking plaintiff's allegations as true, the Bond Contract unambiguously covers plaintiff for the work performed. Thus defendant's motion to dismiss is denied.

10

## IV. Conclusion

Merchants Bonding Company's motion to dismiss (Dkt. 16) is DENIED.

IT IS SO ORDERED.

Dated: October 21, 2016　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 21, 2016.

　　　　　　　　　　　　　　　　s/Felicia M. Moses
　　　　　　　　　　　　　　　　FELICIA M. MOSES
　　　　　　　　　　　　　　　　Case Manager